UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD EARL ALLEN,<br><br>  Plaintiff,<br><br>  v.<br><br>B. BOTKIN,<br><br>  Defendant. | No. 2:17-cv-1584 WBS DB P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendant used excessive force and retaliated against him. Before the court is defendant's motion for summary judgment. For the reasons set forth below, the court will recommend defendant's motion be granted in part and denied in part.

**BACKGROUND**

Plaintiff filed his civil rights complaint in this court on July 31, 2017. (ECF No. 1.) Therein, he alleged that on August 13, 2016 at California State Prison-Solano ("CSP-SOL") defendant Correctional Officer Botkin forced plaintiff into a single pair of handcuffs behind his back despite being told that plaintiff had a medical chrono. That chrono required that a waist chain be used because an injury prevented plaintiff from placing his arms behind his back. In

////

addition, plaintiff argued that Botkin authored a false Rules Violation Report ("RVR") about the incident in retaliation for plaintiff's previous submission of grievances against him.

On screening, the court found plaintiff stated potentially cognizable claims against defendant for retaliation in violation of the First Amendment and for excessive force in violation of the Eighth Amendment. (ECF No. 7.) Defendant filed an answer to the complaint on July 18, 2018. (ECF No. 17.) On March 4, 2019, defendant filed the present motion for summary judgment. (ECF No. 21.) On June 21, plaintiff filed an opposition (ECF No. 29) and on July 1, respondent filed a reply (ECF No. 31).

## MOTION FOR SUMMARY JUDGMENT

### I. Summary Judgment Standards under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party typically may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. However, a complaint that is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise from personal knowledge and contain specific facts admissible into evidence. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the verified complaint as an opposing affidavit because the plaintiff "demonstrated his personal knowledge by citing two specific instances where correctional staff members . . . made statements from which a jury could reasonably infer a retaliatory motive"); McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d 407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary judgment because it "fail[ed] to account for the fact that El Bey signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746. His verified complaint therefore carries the same weight as would an affidavit for the purposes of summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

To show the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be

3

shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## II. Exhaustion of Retaliation Claim

In his complaint, plaintiff alleges defendant authored an RVR against plaintiff regarding the events on August 13, 2016 in retaliation for plaintiff's prior submission of appeals against defendant. Defendant contends plaintiff failed to include his allegations of retaliation in any of the appeals he submitted. Therefore, defendant argues, plaintiff failed to exhaust that claim and may not raise it in this court. In his opposition, plaintiff only minimally addresses this issue. He states that there is no "cookie cutter method when filing appeals."

### A. Legal Standards for Exhaustion of Administrative Remedies

#### 1. PLRA Exhaustion Requirement

The Prison Litigation Reform Act of 1995 (PLRA) mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Compliance with deadlines and

other critical prison grievance rules is required to exhaust. Woodford v. Ngo, 548 U.S. 81, 90 (2006) (exhaustion of administrative remedies requires "using all steps that the agency holds out, and doing so properly"). "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,'— rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88); see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting Jones, 549 U.S. at 218).

Although "the PLRA's exhaustion requirement applies to all inmate suits about prison life," Porter v. Nussle, 534 U.S. 516, 532 (2002), the requirement for exhaustion under the PLRA is not absolute, Albino v. Baca, 747 F.3d 1162, 1172-72 (9th Cir. 2014) (en banc). As explicitly stated in the statute, "[t]he PLRA requires that an inmate exhaust only those administrative remedies 'as are available.'" Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (quoting 42 U.S.C. § 1997e(a)) (administrative remedies plainly unavailable if grievance was screened out for improper reasons); see also Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available."). "We have recognized that the PLRA therefore does not require exhaustion when circumstances render administrative remedies 'effectively unavailable.'" Sapp, 623 F.3d at 822 (citing Nunez, 591 F.3d at 1226); accord Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance.").

Dismissal of a prisoner civil rights action for failure to exhaust administrative remedies must generally be brought and decided pursuant to a motion for summary judgment under Rule 56, Federal Rules of Civil Procedure. Albino, 747 F.3d at 1168. "Nonexhaustion" is "an affirmative defense" and defendants have the burden of "prov[ing] that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Id. at 1171-72. A remedy is "available" where it is "capable of use; at hand." Williams v. Paramo, 775 F.3d

5

1182, 1191 (9th Cir. 2015) (quoting Albino, 747 F.3d at 1171). Grievance procedures that do not allow for all types of relief sought are still "available" as long as the procedures may afford "some relief." Booth v. Churner, 532 U.S. 731, 738 (2001). If a defendant meets the initial burden, a plaintiff then must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1172. Remedies are "effectively unavailable" where they are "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." Id. (quoting Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). "[T]he ultimate burden of proof," however, never leaves the defendant. Id.

### 2. California's Inmate Appeal Process

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). Inmates in California proceed through three levels of appeal to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate appeal form; (2) second level appeal to the institution head or designee; and (3) third level appeal to the Director of the California Department of Corrections and Rehabilitation ("CDCR"). Cal. Code Regs. tit. 15, § 3084.7. Under specific circumstances, the first level review may be bypassed. Id. The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies. See id. § 3084.7(d)(3). However, a cancellation or rejection decision does not exhaust administrative remedies. Id. § 3084.1(b).

A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). In submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(3). Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and he or she must "describe the specific issue under appeal and the relief requested." Id. §§ 3084.2(a)(4). The

appeal should not involve multiple issues that do not derive from a single event. Id. § 3084.6(b)(8).

An inmate has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b).

**B. Undisputed Background Facts re Exhaustion**

Plaintiff submitted the following appeals regarding defendant during the time period in question:

- Appeal No. SOL-16-1880 submitted August 22, 2016

  This appeal alleged that on August 13, 2016, defendant twisted plaintiff's arm and injured his shoulder. The appeal was denied at the third level of review on February 7, 2017. (Ex. C to Voong Decl. (ECF No. 21-7 at 24-42).)

- Appeal No. SOL-16-2333 submitted October 19, 2016

  This appeal concerned an RVR authored by defendant on August 13, 2016. Plaintiff largely complained of the process of the RVR hearing. He also contended that defendant was using the RVR process to "express his hate/dislike toward" plaintiff. Neither plaintiff nor those who reviewed his appeals mentioned that plaintiff was contending that defendant had issued the RVR in retaliation for plaintiff's submission of prior grievances about defendant. This appeal was denied at the third level of review on April 10, 2017. (Ex. D to Voong Decl. (ECF No. 21-7 at 44-68).)

- Appeal No. SOL-16-2405 submitted October 26, 2016

  In this appeal, plaintiff complained of another RVR issued by defendant. This RVR was dated August 29, 2016. Plaintiff described defendant's decision to issue the RVR as a "clear case of revenge." At the third level of review, the decision states that plaintiff claimed he was issued the RVR in retaliation for submitting a staff complaint against defendant. The third level decision was issued on October 2, 2017. (Ex. E to Voong Decl. (ECF No. 21-7 at 70-123).)

7

- Appeal No. CSP-S-16-1677 submitted July 27, 2016

    Plaintiff challenged an RVR issued by defendant on June 3, 2016 regarding an event on May 25, 2016. In the appeal, plaintiff argued that defendant's issuance of the RVR was done in "retaliation" because plaintiff was found not guilty on a prior RVR. Because the RVR was untimely, plaintiff was granted relief at the second level of review and the RVR was dismissed. Plaintiff then withdrew his appeal. (Ex. E to Petty Decl. (ECF No. 21-6 at 71-99).)

**C. Analysis of Exhaustion**

Before he filed a § 1983 action here, plaintiff must have fully exhausted his appeals by submitting them to the third level of review and receiving a denial at that level. Plaintiff had exhausted his grievance Nos. SOL-16-1880 and SOL-16-2333 prior to July 2017 when he filed his complaint. Neither of those grievances raised the issue of retaliation. While plaintiff complained in SOL-16-2333 about defendant's hatred toward him, he did not identify defendant's actions as retaliatory for plaintiff's submission of appeals.

A prisoner need not identify his claims with a high level of specificity to exhaust them. However, he must at least put the defendant on notice of the nature of his claim. See Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). The basis for a claim of retaliation is that a state actor took an adverse action in response to a prisoner's exercise of his First Amendment rights, thereby chilling the exercise of those rights. See Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (claim of retaliation requires a prisoner show, among other things, that defendant took an adverse action against him because of prisoner's exercise of protected conduct). Plaintiff's allegation that defendant "hated" him did not put defendant on notice that plaintiff's was alleging any sort of claim that defendant's actions were motivated by plaintiff's exercise of any First Amendment rights.

Plaintiff's appeal No. CSP-S-16-1677, submitted in July 2016, also did not exhaust the retaliation claim alleged in the complaint. In that appeal, plaintiff contended that defendant retaliated against him for being found not guilty of a prior rule violation. That is not the same issue raised in the complaint. In his complaint, plaintiff contended that defendant filed a false

8

RVR regarding the August 13, 2016 incident in retaliation for plaintiff's prior appeals against defendant. Therefore, CSP-S-16-1677, filed before that date, cannot be construed to have exhausted plaintiff's current retaliation claim.

As defendant points out, plaintiff understood how to identify a claim of retaliation. In his grievance No. SOL-16-2405, plaintiff explained that he was challenging defendant's conduct because, among other things, it was done in retaliation for plaintiff's filing a prior grievance against defendant. (ECF No. 21-7 at 74.) However, SOL-16-2405 was not resolved at the third level of review until after plaintiff filed his complaint here. Accordingly, it cannot provide the basis for exhaustion of plaintiff's present retaliation claim. See 42 U.S.C. §1997e(a) (prisoner must exhaust administrative remedies prior to filing suit); McKinney v. Carey, 311 F.3d 1198, 1199-1200 (9th Cir. 2002).

For these reasons, this court finds plaintiff failed to exhaust his retaliation claim against defendant and it should be dismissed. Because plaintiff failed to exhaust, this court does not reach the merits of that retaliation claim.

**III.   Excessive Force**

Plaintiff contends in 2016 he had a chrono requiring that only waist chains be used to restrain him due to a prior shoulder injury. When defendant started to handcuff him, plaintiff claims he informed defendant that he had a chrono requiring waist chains. Nonetheless, plaintiff continues, defendant handcuffed plaintiff behind his back, forcefully twisting plaintiff's arms, which exacerbated plaintiff's shoulder injury.

Defendant responds that plaintiff did not, at the time of this incident, have a waist chain chrono. Defendant also contends he used two sets of handcuffs linked together as an accommodation to plaintiff and that plaintiff did not indicate he suffered any pain when being cuffed.

**A.  Eighth Amendment Legal Standards**

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither

accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320). In order to prevail on a claim of cruel and unusual punishment, however, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

For claims arising out of the use of excessive physical force, the issue is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (quoting Hudson, 503 U.S. at 7). The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8, and although de minimis uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, Wilkins, 559 U.S. at 37-8 (citing Hudson, 503 U.S. at 9-10).

**B. Undisputed Material Facts**

- On August 13, 2016, defendant was a correctional officer working as a floor officer at CSP-SOL in Facility B, the building where plaintiff was housed. (Def's Stmt. of Undis. Facts ("DSUF") #13.)
- As plaintiff was walking toward the exit of the dayroom, defendant felt he was a possible security risk and contacted the control center informing them he had a non-compliant inmate. (DSUF #18.)
- An alarm was sounded and Facility B staff responded. (DSUF #18.)
- Defendant placed plaintiff in handcuffs behind plaintiff's back. (DSUF ##19, 22.)
- Plaintiff was seen by medical staff at the scene of the incident. He was referred to the Emergency Room at San Joaquin General Hospital where he had an x-ray. He

|  |  |
|---|---|
| 1 | was then returned to the prison.  (DSUF #27.) |

**C. Discussion**

The parties disagree about key facts regarding plaintiff's excessive force claim.  First, they disagree about what occurred immediately before defendant handcuffed plaintiff.  Defendant states he observed plaintiff walking toward the exit of the dayroom and attempted to stop him.  He twice yelled plaintiff's name and approached plaintiff but plaintiff "ignored" him.  (Botkin Decl. (ECF No. 21-5) ¶ 2.)  Defendant states that he made eye contact with plaintiff and it was "clear" that plaintiff heard defendant and understood his orders.  (Id.)  Plaintiff then began to "speed up to exit the building."  Defendant yelled that plaintiff would be "receiving an RVR," but plaintiff continued toward the exit.  (Id.)

Plaintiff states that he did not hear any officer call his name and did not realize defendant was trying to stop him.  He further states that he did not speed up toward the exit.  (ECF No. 29 at 9.)

The parties also disagree about whether plaintiff made defendant aware of a chrono requiring waist chains.  Plaintiff states that he always carried a copy of his chrono and provided it to defendant on the day in question.  (ECF No. 29 at 10.)  Defendant states that during his encounter with plaintiff, plaintiff "made no statements about having a chrono for waist chains or requesting to be restrained in waist chains rather than handcuffs."  (Botkin Decl. (ECF No. 21-5) ¶ 3.)  Rather, plaintiff asked defendant to handcuff his hands in front of his body.  Defendant states he did not do so because it is prison policy to handcuff inmates behind their back.  (Id.)

The status of plaintiff's chrono is in dispute.  Plaintiff states that he had a "permanent" chrono for waist chains that had not been "renewed."  (ECF No. 29 at 10.)  Plaintiff provides copies of "Comprehensive Accommodation Chronos" dated December 31, 2012 and August 16, 2013.  (Id. at 25, 26.)  Both show that "waist chains in prison" were required and that the accommodation was permanent.  (Id.)  However, defendant provides a copy of a "Comprehensive Accommodation Chrono" for plaintiff, dated January 15, 2014 that does not show plaintiff required special cuffing.  (Ex. B to Decl. of Mathison (ECF No. 21-4 at 14).)  He also provides a "DPP Disability/Accommodation" chrono dated August 4, 2016, shortly before the August 13,

11

2016 event at issue here. That chrono also does not indicate plaintiff required any special cuffing. (Id. at 15.) Finally, a disability chrono dated February 12, 2018 shows plaintiff required "special cuffing" for a "temporary" period of time and this chrono would be re-evaluated four days later. (Id. at 16.) Further, defendant states that he had "previously looked up [plaintiff's] chronos in SOMS[1] and in a book in the housing building that catalogues those types of matters, and did not see a waist chains chrono for him." (Botkin Decl. (ECF No. 21-5) ¶ 3.)

How plaintiff was cuffed and whether or not defendant did so with unnecessary roughness and the intent to harm plaintiff is disputed. Plaintiff contends that defendant first handcuffed him behind his back with a single set of cuffs. (ECF No. 29 at 10.) Plaintiff states that defendant grabbed plaintiff's arm and twisted it. (Comp. (ECF No. 1 at 14).) Plaintiff immediately began experiencing extreme pain in his shoulder, arm, and back. (ECF No. 29 at 10.) Plaintiff states that he then got the sergeant's attention and the sergeant intervened by placing plaintiff in an extra set of handcuffs. (Id. at 10-11; ECF No. 1 at 14.)

On the other hand, defendant states that he initially used the two sets of handcuffs as an accommodation to give plaintiff a greater range of motion while his arms were behind his back. (Botkin Decl. (ECF No. 25-1) ¶ 3.) Defendant states he did not twist or jerk plaintiff's arm and plaintiff did not act as if he was in pain when being handcuffed. (Id.)

Plaintiff's excessive force claim cannot be resolved on summary judgment. Considering the facts in the light most favorable to plaintiff, there are material issues of fact relevant to defendant's intent, defendant's actions, and plaintiff's injury. Accordingly, this court will recommend summary judgment be denied on plaintiff's excessive force claim.

**IV.  Qualified Immunity**

**A. Legal Standards**

Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights. Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a court is

---

[1] SOMS is California's Strategic Offender Management System. Cal. Code Regs. tit. 15, §3000.

12

presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from, Pearson v. Callahan, 555 U.S. 223 (2009) (the two factors set out in Saucier need not be considered in sequence). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011). The existence of triable issues of fact as to whether prison officials were deliberately indifferent does not necessarily preclude qualified immunity. Estate of Ford v. Ramirez–Palmer, 301 F.3d 1043, 1053 (9th Cir. 2002).

"For the second step in the qualified immunity analysis—whether the constitutional right was clearly established at the time of the conduct—the critical question is whether the contours of the right were 'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011) (quoting al-Kidd, 563 U.S. at 741) (some internal marks omitted). "The plaintiff bears the burden to show that the contours of the right were clearly established." Clairmont v. Sound Mental Health, 632 F.3d 1091, 1109 (9th Cir. 2011). "[W]hether the law was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." Estate of Ford, 301 F.3d at 1050 (citation and internal marks omitted). In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal. Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007); see also Hope v. Pelzer, 536 U.S. 730, 741 (2002) (the "salient question" to the qualified immunity analysis is whether the state of the law at the time gave "fair warning" to the officials that their conduct was unconstitutional). "[W]here there is no case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" C.B. v. City of Sonora, 769 F.3d 1005, 1026 (9th Cir. 2014) (citing al-Kidd, 563 U.S. at 740). An official's subjective beliefs are irrelevant. Inouye, 504 F.3d at 712.

**B. Analysis**

Defendant argues he is entitled to qualified immunity because it would not have been clear to him that what he was doing at the time violated the Constitution. However, defendant's argument depends upon a construction of the disputed facts in defendant's favor. If plaintiff had a pre-existing shoulder injury and informed defendant that he had a chrono requiring restraints in waist chains, and defendant then handcuffed plaintiff behind his back using unnecessary and intentional force, defendant could be liable for an Eighth Amendment violation. The standards for what constitute excessive force were certainly clearly established in 2016, as they are now. Defendant is not entitled to qualified immunity on summary judgment.

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 21) be granted in part and denied in part.
2. Defendant be granted summary judgment on the retaliation claim based on plaintiff's failure to exhaust it and that claim be dismissed without prejudice.
3. Defendant be denied summary judgment on plaintiff's claim of excessive force and be denied summary judgment on the qualified immunity defense.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, either party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 5, 2019

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9/DLB1/prisoner-civil rights/alle1584.msj fr

14